**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANDREA PIRROTTI, : CIVIL ACTION NO. |
|     Plaintiff, : 3:11-CV-00439 (JCH) |
| : |
| v. : |
| : SEPTEMBER 6, 2011 |
| RESPIRONICS, INC. : |
|     Defendant. : |
| : |

**RULING ON DEFENDANT'S MOTION TO DISMISS (Doc. No. 28)**

**I.    INTRODUCTION**

Plaintiff, Andrea Pirrotti, brings this suit against Respironics, Inc. ("Respironics"), alleging that Respironics engaged in a fraudulent asset transfer and demanding enforcement of a prior judgment, punitive damages, and attorneys' fees based on their successorship liability.[1]

Pirrotti originally filed her Complaint on March 22, 2011. In response, Respironics filed a Motion to Dismiss on May 19, 2011. Pirrotti then filed as of right an Amended Complaint ("Amd. Compl.") on May 27, 2011.[2] Respironics again filed a Motion to Dismiss and Strike in response on June 10, 2011.

In response to the Amended Complaint, Respironics argues that Pirrotti has failed to state a claim upon which relief can be granted because she has failed to allege

---

[1] Pirrotti originally filed suit against Western Cape Direct, LLC as well. On August 29, 2011, Pirrotti voluntarily dismissed all claims against Western Cape Direct, LLC. See Doc. Nos. 47, 48.

[2] In accordance with federal practice, the Amended Complaint supersedes the original complaint and "the original pleading no longer performs any function in the case . . . ." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (2010). The court will consider plaintiff's Amended Complaint and thus only Respironics's June 10, 2011 Motion to Dismiss and Strike.

-1-

facts that would support the conclusion that Respironics is subject to successor liability or that awarding attorney fees is proper, and she has included allegations that are irrelevant to her claim. See Mem. Supp. Def. Respironics Mot. Dismiss & Strike at 6, 10–11 (hereafter "Mem. Supp. Mot. Dismiss & Strike").

For the reasons that follow, the court grants in part and denies in part Respironics's Motions to Dismiss and Strike.

## II. BACKGROUND[3]

Pirrotti was an employee of Helicor, Inc. ("Helicor"), and was hired by Adam Forbes, Helicor's sole stockholder.[4] Amd. Compl. at ¶¶ 14, 24. During Pirrotti's employment at Helicor, Forbes unlawfully withheld commissions from her, which prompted her to file a suit for breach of contract on February 6, 2009. Id. at ¶ 25. On August 28, 2009, the court awarded Pirrotti a judgment in the amount of $76,710.00, plus interest at 10%, accruing from February 1, 2008. Id. at ¶¶ 11, 25-26, 39.[5]

Forbes also controls Respironics, Inc. Id. at ¶¶ 17–18. On or about June 16, 2008, Forbes executed a promissory note for $400,000, on behalf of Helicor, which was held by Respironics. Id. at ¶ 31. Along with Victor Sumara, another officer of Helicor, Forbes secured the requisite support to execute this loan by expanding Helicor's Board of Directors, in violation of the corporate by-laws, after the original Board failed to

---

[3] For the purposes of this Motion to Dismiss, the court takes the factual allegations in the Amended Complaint as true, and draws all reasonable inferences in favor of the plaintiff.

[4] Pirrotti's Amended Complaint is inconsistent regarding the date Forbes hired her. See Amd. Compl. at ¶ 14; cf. Amd. Compl.at ¶ 24.

[5] Pirrotti's Amended Complaint erroneously states that judgment was entered on October 8, 2009. In fact, judgment was entered on August 28, 2009. See Pirrotti v. Helicor, Inc., 3:09 CV 231(PCD), Doc. No. 24.

support Forbes's proposal for the loan at a prior meeting. Id. at ¶¶ 28-30, 48. With the addition of the new Board members, Forbes was able to secure the majority necessary to execute the promissory note with Respironics. Id. at ¶¶ 29, 31. The Board also waived Helicor's right to urge a conflict of interest or receive notice of any default on the note from Respironics. Id. at ¶ 32. In addition, Forbes and Sumatra each received $100,000 for personal use from Helicor or Respironics. Id. at ¶ 33. No portion of that loan has been repaid by either Forbes or Sumatra. Id. at ¶¶ 34-35.

Acting together, Helicor and Respironics pretended that Helicor had defaulted on its loan from Respironics. See id. at ¶ 36. On May 15, 2009, Respironics sent out a Notice of Disposition of Collateral ("Notice") to Helicor, in the amount of $649,117.81, based on the loan default Id. at ¶ 36.

After Respironics sent out the Notice and gained control of Helicor's assets, they proceeded to transfer the assets to Western Cape Direct, LLC ("Western Cape") on June 15, 2009, for an unknown amount in consideration. Id. at ¶¶ 37, 40. The transfer was executed in two lots. Id. at ¶ 42. The first lot allegedly consisted of 2,200 units of Helicor's main product, Stress Eraser, located in China and South Dakota, and pre-paid materials and components for the manufacturing of the units also located in China. Id. at ¶ 42. The second lot allegedly consisted of Helicor's interest in intellectual property, including all trademarks, names, and patents. Id. at ¶¶ 15, 42. Forbes is the sole stockholder of Western Cape, which is allegedly under the control of Helicor, through Forbes. Id. at ¶¶ 19, 21. Helicor's key employees, including Forbes and Peter Ellman,

another equity holder of Helicor, are now employed by either Respironics or Western Cape.  Id. at ¶¶ 13, 22-23, 38.

On October 21, 2010, Pirrotti contacted Respironics's agent, Gregory Taddonio for the purpose of obtaining an accounting of Helicor's alleged unpaid indebtedness.  Id. at ¶ 44.  Such accounting was to be made available to any person upon receipt of a twenty dollar fee.  Id. at ¶¶ 43-44.  Respironics has not yet made this accounting available to Pirrotti.  Id. at ¶ 46.

### III.    STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally-cognizable claim by making allegations that, if true, would show he is entitled to relief.  See Bell Atlantic Corp v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief' ").  The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of N. Y., 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F. 3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp., 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F. 3d 202, 213 (2d Cir. 2008.) The plausibility standard does not "require[ ] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F. 3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal court explained, it

> does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Iqbal, 129 S. Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging a plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F. 3d at 213 (citations omitted); accord Arista Records, 604 F. 3d at 120.

## IV. DISCUSSION

### A. Successor Liability

The bases for successor liability in Connecticut were described by the district court in Ricciardello v. J.W. Gant & Co., 717 F. Supp. 56, 57-58 (D. Conn. 1989):

> Under the general rule, a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless (1) the purchase agreement expressly or impliedly so provides; (2) there was a merger or consolidation of the two firms; (3) the purchaser is a "mere continuation" of the seller; or (4) the transaction is entered into fraudulently for the purpose of escaping liability.

Numerous Connecticut courts have since adopted this standard. See, e.g., Call Ctr. Techs., Inc. v. Grand Adventure Tour & Travel Publ'g Corp., 635 F. 3d 48, 52 (2d Cir. 2011) (discussing Connecticut law); Chamlink Corp. v. Merritt Extruder, 96 Conn. App. 183, 188 (Conn. App. Ct. 2006). Several Connecticut courts have also recognized a fifth exception for "product line" continuity. See, e.g., Kennedy v. Oshkosh Truck Corp., No. CV920510394S, 1995 WL 27400, at * 2 (Conn. Super. Jan. 18, 1995).

1. Fraudulent Conveyance

Under the fourth basis for successor liability, Connecticut General Statutes Section 52-552e provides two theories that are available to a creditor to prove fraudulent conveyance. First, a creditor may prove that the transfer was made with actual intent to defraud. See Conn. Gen. Stat. § 52-552e(a)(1). Second, a creditor may prove that the debtor did not receive "a reasonably equivalent value in exchange for the transfer." See id. A creditor may succeed by proving either theory. See Chemical Bank v. Dana, 234 B.R. 585, 592 (D. Conn. 1999). Pirrotti has pled enough to plausibly state a fraudulent transfer claim under either theory.

To state a fraudulent transfer claim under a constructive fraud theory, section 52-552e(a)(2) requires that a creditor demonstrate that her claim arose before the transfer occurred and that the debtor made a transfer without receiving reasonable

compensation. In addition, the creditor must show either that "the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or that the debtor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." See Conn. Gen. Stat. § 52-552e(a)(2).

Pirrotti filed her original claim on February 6, 2009. Amd. Compl. at ¶ 25. On May 15, 2009, Respironics, another company controlled by Forbes, sent out a Notice of Disposition of Collateral in response to Helicor's apparent default on a previously executed promissory note, a portion of which loan's proceeds inured to Forbes's personal benefit, not Helicor's benefit. Id. at ¶¶ 18, 33, 36. As a result of Helicor's default on the promissory note, Helicor was left judgment proof, and all of Helicor's assets were transferred through Respironics to Western Cape, another company in which Forbes has a principal interest, on June 15, 2009. Id. at ¶¶ 36–37, 40. Given these asserted facts, Pirrotti has sufficiently stated a plausible fraudulent transfer claim under a constructive fraud theory.

To state a claim for actual fraud under section 52-552e, a creditor must plead that her claim arose before the transfer occurred and that the transfer was made "with actual intent to hinder, delay or defraud any creditor of the debtor." "A plaintiff alleging a fraudulent conveyance is required to plead only the requisite mental state with particularity." Nat. Council on Comp. Ins., Inc. v. Caro & Graifman, P.C., 259 F. Supp. 2d 172, 179 (D. Conn. 2003). A conclusory allegation of malice or intent is sufficient if the allegation is supported by facts that give rise to a strong inference of fraudulent intent. See Fed. R. Civ. P. 9(b); Nat. Council, 259 F. Supp. 2d at 179. Actual

fraudulent intent may be inferred from the circumstances surrounding a transaction, including the parties' relationship, and the secrecy, haste, or unusualness of the transaction. See HBE Leasing Corp. v. Frank, 48 F. 3d 623, 639 (2d Cir. 1995)

Pirrotti has alleged that Forbes acted with the purpose of frustrating efforts, by her and others similarly situated, to collect on their judgments when he orchestrated the transfer of Helicor's assets to Western Cape. See Amd. Compl. at ¶¶ 27, 36–37. Furthermore, fraudulent intent can plausibly be inferred from Pirrotti's assertions regarding the circumstances surrounding the transfer of Helicor's assets to Respironics, and subsequently thereafter to Western Cape. Id. at ¶¶ 28-33, 37, 40. Additionally, the failure of Respironics to provide her with an audit further supports that inference. Id. at ¶ 46. Thus, Pirrotti has sufficiently pled circumstances giving rising to an inference of fraudulent intent.

Respironics contends that Pirrotti has not alleged enough to plausibly state successor liability because she has not stated the terms under which Respironics acquired Helicor's assets. See Mem. Supp. Mot. Dismiss & Strike at 6-7. In light of Respironics's failure to provide Pirrotti with an accounting of Helicor's unpaid indebtedness as she has requested, these omissions are not fatal to the complaint. See Amd. Compl. at ¶¶ 43-46.

The court therefore denies Respironics's Motion to Dismiss as to Pirrotti's successor liability claim.

B. Attorneys' Fees

Plaintiff has pled sufficient allegations to support a successor liability claim under both actual and constructive fraud theories. Connecticut law allows punitive damages where the evidence shows an intentional and wanton violation of the rights of others. See Vandersluis v. Weil, 176 Conn. 353, 358 (1978). If awarded, punitive damages are restricted to the reasonable cost of the litigation, less taxable costs. See Markey v. Santangelo, 195 Conn. 76, 80–81 (1985). To show a basis for the recovery of punitive damages, the pleadings must allege such conduct and sufficiently inform the court and opposing counsel that the plaintiff seeks such damages. See id. at 76. Upon proof of such conduct, fraudulent transfer may be a basis to award punitive damages. See N. Tankers Ltd. v. Backstrom, 967 F. Supp. 1391, 1419 (D. Conn. 1997).

Here, Pirrotti has sufficiently alleged intentional and wanton conduct and clearly informed the court and opposing counsel of her intention to seek punitive damages, including attorneys' fees. See Amd. Compl. at ¶ 52. Thus, the court denies Respironics's Motion to Dismiss Plaintiff's claim for attorney fees.

**V. MOTION TO STRIKE**

Rule 12(f) permits the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court cannot strike a plaintiff's allegations unless "no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F. 2d 887, 893 (2d Cir. 1976). Evidentiary questions are more properly analyzed at trial and not "on the sterile field of the pleadings alone." Id. Therefore, these motions are viewed unfavorably and rarely

granted. See Rodriguez v. Bear Stearns Cos., Inc., No. 07-cv-1816(JCH), 2009 WL 995865, at *10 (D. Conn. Apr. 14, 2009); Lipsky, 551 F. 2d at 893 ("[T]he courts should not tamper with the pleadings unless there is a strong reason for doing so.").

Respironics moves to strike paragraphs six through ten of the Amended Complaint. See Mem. Supp. Mot. to Dismiss & Strike at 10-11. In her Opposition Memorandum, Pirrotti agrees to strike paragraphs seven and eight. See Mem. in Opp. at 14. The court therefore grants, absent objection, Respironics's Motion to Strike as to paragraphs seven and eight of Plaintiff's Amended Complaint.

With regard to paragraphs six, nine, and ten, Pirrotti's language does not pass muster under Rule 12(f). Information regarding when the original complaint was served, that Respironics served a Motion to Dismiss instead of an Answer, and that the plaintiff has timely filed her Amended Complaint does not further support Pirrotti's claims and are thus unnecessary. Amd. Compl. at ¶¶ 6, 9, 10. Therefore, the court grants Respironics's Motion to Strike as to paragraphs six, nine and ten of Plaintiff's Amended Complaint as well.

## VI.   CONCLUSION

For the reasons discussed above, the court denies Respironics's Motion to Dismiss (Doc. No. 28) as to Pirrotti's successor liability claim. The court grants Respironics's Motion to Strike paragraphs six through, and including, ten of the Amended Complaint.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 6th day of September, 2011.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge