## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREA PIRROTTI, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:11-CV-00439 |
| v. | : | |
| | : | MARCH 12, 2013 |
| RESPIRONICS, INC., | : | |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR RECONSIDERATION (Doc. No. 178) and PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL (Doc. No. 183)**

## I.    INTRODUCTION

Plaintiff, Andrea Pirrotti, brings this suit against Respironics, Inc. ("Respironics"), alleging that Respironics engaged in a fraudulent asset transfer and demanding enforcement of a prior judgment, punitive damages, and attorney's fees based on their successor liability.  Pirrotti filed a Motion for Summary Judgment (Doc. No. 84).  That Motion was denied in a Ruling on the record (Doc. No. 105).  Subsequently, Respironics filed its Motion for Summary Judgment (Doc. No. 126).  The court, while agreeing with most of Respironics' arguments, ultimately denied the Motion ("Def.'s Summ. J. Ruling") (Doc. No. 176).  Respironics then filed this Motion for Reconsideration (Doc. No. 178), arguing that this court applied the law incorrectly when it found that a material issue of fact existed as to Respironics' liability under the constructive fraud theory of successor liability, and seeking clarification of the court's Ruling.  That Motion is **granted**.  For the following reasons, the court finds that Pirrotti may proceed to trial on the constructive and actual fraud theories of the fraudulent purpose exception to successor non-liability.

Pirrotti has also filed an additional motion.  Pirrotti has filed a Motion to Disqualify Respironics' Counsel, Day Pitney LLP ("Mot. to Disqualify") (Doc. No. 183) because a

former attorney for the firm who worked on this matter subsequently withdrew from the case and began work as a judicial clerk for a district court judge in the District of Connecticut (Hartford) not involved in this matter.  That motion is **denied**.

## II.   STANDARD OF REVIEW

The Second Circuit has held that "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995) (citations omitted). There are three grounds that justify granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice. Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992).  That the court overlooked controlling law or material facts may also entitle a party to succeed on a motion to reconsider. Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir.2000) (per curiam) ("To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.") (internal quotation marks omitted).

## III.   DISCUSSION

### A.  Motion for Reconsideration

This case concerns Pirrotti's claim that she is entitled to collect on a prior judgment she obtained against a company called Helicor, because Respironics is liable

2

as Helicor's successor.  Respironics moved for summary judgment as to the issue of its successor liability.

In Connecticut, "The mere transfer of the assets of one corporation to another corporation or individual generally does not make the latter liable for the debts or liabilities of the first corporation except where the purchaser expressly or impliedly agrees to assume the obligations, the purchaser is merely a continuation of the selling corporation, the companies merged or the transaction is entered into fraudulently to escape liability."  Chamlink Corp. v. Merritt Extruder Corp., 96 Conn.App. 183, 187 (Conn. App. 2006).

In its Ruling on the Motion for Summary Judgment, the court analyzed Pirrotti's claim of successor liability under the four factors enumerated above.  The court found that no issue of material fact existed as to Pirrotti's failure to establish Respironics' liability as a successor under the theories of the express or implied assumption of Helicor's obligations, the actual or de facto merger of the two entities, that Respironics was a mere continuation of Helicor, or that Helicor actually intended to defraud its creditors.  The court found in Respironics' favor as to all of these issues, and they may not be asserted by Pirrotti at trial.[1]

The court next considered Respironics' Motion for Summary Judgment as to its liability as a successor to Helicor under the theory that Helicor transferred its assets to Respironics to fraudulently escape liability.  Courts examining this theory generally look to Connecticut's law on fraudulent conveyance, as the court did here.  See, e.g., Greystone Community Reinvestment Ass'n, Inc. v. Berean Capital, Inc., 638 F.Supp.2d

---

[1] To the extent that Respironics' Motion for Reconsideration also constituted a Motion for Clarification, the court believes this statement resolves the issues raised in that Motion.

278, 292 (D. Conn. 2009).  The court does note that at least one court in Illinois has examined the issue of overlap between the common law doctrine of successor liability's fraudulent purpose exception and a Uniform Fraudulent Transfer Act statute.  That court concluded that while the principles underlying the two areas of law are indeed similar, they are not binding on each other.  See Davila v. Magna Holding Co., No. 97 C 1909, 2000 WL 263690, *8 (N.D. Ill. Feb, 28, 2000) ("Unlike the doctrine of successor liability, the UFTA is a discrete statutory cause of action with specific pleading requirements. There is no requirement in Illinois that a plaintiff must first be able to state a claim under the UFTA before he or she can take advantage of the fraudulent purpose exception to successor nonliability.").  The court is cognizant of the potential danger in reading too strictly the particular elements of a statutory fraudulent transfer claim when considering successor liability, particularly because the Connecticut Appellate court has adopted a traditional common law rule for successor liability claims and has not addressed this issue directly.  See Chamlink, 96 Conn. App. at 187 (Conn. App. 2006); Garcia v. Serpe, No. 3:08CV1662 (VLB), 2012 WL 280253, *13 (D. Conn. Feb. 6, 2012); see also Fiber0Lite Corp. v. Molded Acoustical Products of Easton, Inc., 186 B.R. 603, 610 (Bankr. E.D. Pa. 1994) ("[O]ur Court of Appeals has cautioned that when analyzing the issue of successor liability, we must be careful not to elevate form over substance") (citing Polius v. Clark Equip. Corp., 802 F.2d 75, 78 (3d Cir. 1986)).  However, given the relative frequency with which courts in Connecticut have consulted the fraudulent transfer statute when considering actual and constructive fraud theories under successor liability claims, the court will likewise do so here.

Connecticut's fraudulent transfer statute states:

4

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor (a) was engaged or was about to engage in a business or a transaction for which for the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Conn. Gen. Stat. § 52-552e(a).  Courts refer to these two lines of inquiry as theories of "actual intent to defraud" and "constructive fraud."   A creditor may succeed by proving either theory.  See Chemical Bank v. Dana, 234 B.R. 585, 592 (D. Conn. 1999).  As stated above, the court granted summary judgment in favor of Respironics as to the actual intent to defraud theory here.

Respironics argued, as a threshold matter, that the actual intent and constructive fraud theories did not apply to it because the transfer at issue in the case -- the sale of Helicor's intellectual and other property -- was the subject of a perfected security interest whose value exceeded that of the underlying property.  Were this the case, Respironics argues, the property would not properly qualify as an "asset" under Connecticut's Fraudulent Transfer Act, and there would thus be no legal basis for the determination that Respironics was liable as a successor to Helicor under the fraudulent transfer theory.  See Conn. Gen. Stat. § 52-552b(2).  Respironics asserted that the total value of its security interest, based on the original $400,000 loan it made to Helicor in 2008, was $435,000 including ancillary costs, an amount that was not exceeded by the

amount received from the sale of the secured Helicor property.[2]  Respironics argues

that the value of the property in question is established by the auction held to sell

Helicor's property and that, because the sale price was equal to the remainder of the

outstanding debt obligation, it did not exceed the value of that obligation and was

therefore not an asset.  See Conn. Gen. Stat. § 52-552b(2) (defining an "Asset" as

"property of a debtor, but the term does not include (A) Property <u>to the extent it is</u>

<u>encumbered by a valid lien</u>") (emphasis added).

      In its Ruling, the court specifically found that various evidence introduced by both

Pirrotti and Helicor attempting to establish some other, objective value for the property

in question were insufficient as a matter of law.  This other insufficient evidence

included Pirrotti's own testimony as to valuation, two 2007 proposals outlining

Respironics' forecast valuation estimates, and an Asset List submitted by Helicor to

Respironics on May 7, 2009.  In short, the court was left solely with the valuation of the

sale as the lodestar in its valuation analysis.

      The court then turned to the nature of the sale itself in order to determine

whether or not the sale price properly constituted the value of the property in question.

The court concluded:

> Drawing all inferences in Pirrotti's favor, as this court must on Summary
> Judgment, the relative lack of advertising, the absence of competitive bids, the
> absence of outside attendees, and the purchase of Lot 2 by the entity that
> convened the sale in the first place raises an issue of material fact as to whether
> the sale was commercially reasonable and, for present purposes, established the

---

[2] Helicor's property consisted of two lots.  Lot 1, which was comprised of physical Helicor assets, was sold to a separate company, Western Cape, for $100.  Lot 2, which was comprised of Helicor's intellectual property, was sold to Respironics for the remaining outstanding monies due under the original 2008 loan from Respironics to Helicor.  See Def.'s Summ. J. Ruling at 5.  Respironics argued that the sales price of the two lots, combined, constituted the fair market value of the collateral, which together were the reasonably equivalent value of the security interest.

fair market value of the property sufficient to demonstrate that the value of the property did not exceed[ ] the value of the security interest.

Def.'s Summ. J. Ruling at 28-29.  The court further concluded that because a material issue of fact remained as to whether the value of the property exceeded the value of the security interest, the court could not conclude that the transferred property was not an "asset" under the Fraudulent Transfer Act.  Id. at 30.

The court further relied on this conclusion in its analysis of Respironics' liability as a successor under the constructive fraud theory.  In Connecticut, a creditor may prove a fraudulent conveyance by showing that the conveyance was made "without receiving a reasonably equivalent value in exchange for the transfer or obligation."  Conn. Gen. Stat. § 52-552e; see also Greystone, 638 F.Supp.2d at 292.  Accordingly, the court examined the evidence regarding whether reasonably equivalent value was indeed received in exchanged for the sale of Helicor's property and, in order to do so, examined whether or not the sale in question was commercially reasonable.

The court concluded, "[T]he nature of the sale here raises issues of material fact as to the sale's commercial reasonableness.  Because of this factual issue, and because Helicor retained no assets with which to pay remaining debt obligations following the sale, the court denies Respironics' Motion for Summary Judgment as to the constructive fraud theory."  Id. at 33.

In its Motion for Reconsideration, Respironics argues that the court placed too much stock in its conclusion that material issues of fact existed as to whether or not the sale was commercially reasonable.  Respironics argues that it does not follow that simply because material issues of fact exist as to the sale's commercial reasonableness, material issues of fact exist as to the question of whether the property

7

in question was properly considered an "asset" subject to fraudulent transfer analysis, or

that material issues of fact exist as to whether a reasonably equivalent value was

received in exchanged for the sale of Helicor's property sufficient to preclude summary

judgment as to the constructive fraud theory.  Respironics argues that the court's

conclusions on these two issues improperly reversed the burden of proof on Pirrotti to

set forth some evidence that the value of Helicor's property exceeded the value of the

security interest and that the price received in the sale was not the reasonably

equivalent value of the property. Respironics asserts:

> Because Pirrotti has produced no evidence, much less clear and convincing
> evidence, to support an essential element of her constructive fraudulent transfer
> claim (i.e., that the property was sold for less than reasonably equivalent value),
> the Court should have granted summary judgment to Respironics on that claim.
>
> Relatedly, Respironics contends that, as a matter of law, it is not Respironics'
> burden to establish that the value of its security interest exceeded the value of
> the property transferred (i.e., to establish that the property was not an "asset"
> under [the Connecticut Uniform Fraudulent Transfer Act]).  It is the plaintiff's
> burden to establish that the property transferred was an asset such that the
> transfer fell within the scope of CUFTA.

Defendant's Memorandum in Support of Motion for Reconsideration ("Def.'s Memo.

Supp. Mot. Reconsideration") (Doc. No. 178-2) at 7. (emphasis and citations omitted).

Pirrotti has offered a somewhat bizarre one-paragraph opposition to the Motion for

Reconsideration, which reads, in relevant part:

> Defendant simply did not like Judge Hall's decision and asked this Court to
> reverse her decision simply because they don't like it.  There is nothing shown
> that this Court misconstrued or misapprehended the law.  No cases are cited, no
> statute is identified so that all this Court is asked to do is reverse.  The
> defendant's [sic] have never denied that they sold Helicor's valuable inventory for
> $100."

See Plaintiff's Memorandum in Opposition to Motion for Reconsideration ("Pl.'s Memo. Opp. Mot. Reconsideration") (Doc. No. 182).[3]  The court agrees with Respironics that the court's analysis of these two related issues in its original Ruling was incomplete.

The court turns first to the issue of Respironics' argument that it cannot be held liable under the fraud theory of successor liability because Pirrotti has put forth no evidence that the value of the transferred property exceeded the value of the security interest on that property.  "[A] transfer cannot be considered fraudulent if, at the time of the transfer, the transferred property is encumbered by valid liens exceeding the property's value because the property would no longer be considered an asset under § 52-552b(2), and only assets may be transferred fraudulently."  Nat'l Loan Investors, L.P. v. World Properties, LLC, 79 Conn. App. 725 (Conn. App. 2003).  As stated above, the definition of asset does not include property "to the extent it is encumbered by a valid lien."

It is clear that, "The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated."  Tyers v. Coma, 214 Conn. 8 (Conn. 1990).  In considering the "actual intent" theory, the court

_____

[3] The court is dismayed at the tone and substance of Pirrotti's opposition, which, in addition to being somewhat insulting to opposing counsel, falsely asserts that opposing counsel failed to cite any cases or statutes in support of its position.  In addition to being entirely unhelpful to the court in terms of substance, this opposition is entirely unbefitting an officer of the court.  Pirrotti would have been better served citing relevant case law in response to the Motion for Reconsideration, something he has almost entirely failed to do.  Further, counsel's stated reason for his exceedingly brief reply -- that he was due to go on vacation for the duration of the response period -- is certainly not "extreme hardship."  Indeed, it did not prevent him from using the submission to file his own Motion To Disqualify Counsel, albeit without any case law support.

To the extent that Pirrotti's combined Opposition to the Motion for Reconsideration, Motion to Disqualify Counsel, and Reply to his Motion for Sanctions was actually a Motion for Extension of Time, it is denied.

in <u>The Cadle Co. v. Jones</u> stated "[P]laitiff bears a burden of proving by clear and convincing evidence that (1) there has been a 'transfer' of an 'asset', which 'asset' must consist of non-exempt property under non-bankruptcy state law . . ." <u>The Cadle Co. v. Jones</u>, No. 3:00CV316WWELEAD, 3:00CV317(WWE), 2004 WL 2049321, *5 (D. Conn. Aug. 20, 2004). It certainly stands to reason that, if the party seeking to set aside a conveyance as fraudulent bears the burden of proof, that burden includes the threshold showing that the property in question was an "asset" under the statute.

In its Ruling, the court determined that outside evidence cited by Pirrotti as proof of the value of Lots 1 and 2 were insufficient as a matter of law because it was either based on inappropriate affidavit testimony from a non-disclosed expert (Pirrotti), or based on documents too temporally removed from the property sale to carry any evidentiary weight. <u>See</u> Def.'s Summ. J. Ruling at 25. The court also found, and Respironics conceded, that an Asset List introduced by Respironics to try and determine the value of the property likewise was insufficient to establish that value. <u>Id.</u> at 30. These determinations are the basis of Respironics' assertion, in its Motion for Reconsideration, that, "Because Pirrotti has no evidence regarding the value of the property at the time of the sale, she cannot establish that the property's value exceeded the amount of the liens and therefore cannot establish that the property was an asset such that the property would fall within the scope of the fraudulent transfer statute."

As Pirrotti's (and Respironics') outside evidence that would tend to show the value of the property was not helpful for making such a determination, the court was left with the question of whether Pirrotti has put forward any evidence in the record that would allow for such a determination. Respironics argues that Pirrotti has not done so.

As the Second Circuit has explained, "'When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.'"  Call Center Technologies, Inc. v. Grand Adventures Tour & Travel Pub. Corp., 635 F.3d 48, 51-52 (2d Cir. 2011) (quoting Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009)).  As such, if Pirrotti has set forth no admissible evidence sufficient to raise a genuine issue of material fact that the value of Helicor's sold property exceeded the value of the security interest, then it cannot survive summary judgment as to the fraudulent transfer claim.[4]

In its Ruling, the court moved directly to the question of whether or not the sale of Helicor's property constituted a commercially reasonable sale, operating under the theory that, if the sale were commercially reasonable, the court would have some evidence of the fair market value of Helicor's property.  Under section 52-552d, "a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement."  Conn. Gen. Stat. § 52-552d(b); see also People's United Bank v. Wetherill Assocs., No. HHD096005763,

---

[4] This standard also applies in the context of the actual and constructive fraud claims.  See Lippe v. Bairnco Corp., 99 Fed. Appx. 274, 281-82 (2d Cir. 2004) ("[F]or plaintiffs to survive summary judgment on their claims for actual and constructive fraud, they must at the very least be able to prove that Keene's creditors were prejudiced by the asset sales.  As plaintiffs' only plausible theory of harm is that Keene received less than fair value in those sales, and plaintiffs have no evidence supporting that theory, plaintiffs cannot survive summary judgment.  This, the district court did not err in granting defendants' motions for summary judgment on all of plaintiffs' fraudulent-conveyance claims.").

2011 WL 383740, *13 (Conn. Super. Jan. 4, 2011) ("A non-collusive secured party would, as a matter of law, establish that People's United gave reasonably equivalent value for its inventory.").  The court analogized the type of "regularly conducted, noncollusive" sale mentioned in section 52-552d to the indices of a "commercially reasonable sale" under the Connecticut Uniform Commercial Code section concerning the disposition of collateral by a secured party after default.  See Conn. Gen. Stat. § 42a-9-610(a) ("After default, a secured party may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing").[5]  This analogy allowed the court to provide some context to its analysis of whether the type of sale that actually took place in this case can serve as a reliable indicator of the reasonably equivalent value of the sold Helicor property.  The court concluded that material issues of facts remained as to whether the sale that took place was indeed "commercially reasonable" (or, more accurately, "regularly conducted" and "non-collusive").  See e.g., Connecticut Bank and Trust Co., N.A. v. Incendy, 207 Conn. 15, 28 (Conn. 1988) ("[T]he secured party must demonstrate that each and every aspect of the sale was conducted in a commercially reasonable manner.  Generally, this requires evidence of such things as the amount of advertising done, the number of people contacted, normal commercial practices in disposing of the particular collateral, the length of time between the repossession and the sale, whether any deterioration in the collateral has occurred, the number of bids

---

[5] This analogy is furthered by the fact that the "reasonably equivalent value" analysis in Connecticut fraudulent transfer cases tracks "reasonably equivalent value" analysis in bankruptcy proceedings involving fraudulent transfers.  The analogy, of course, is not perfect as those cases typically involve questions of a foreclosure sale. See In re Fitzgerald, 255 B.R. 807, 810 (Bankr. D. Conn. 2000) ("The Section 52-552d(b) concept of 'reasonably equivalent value' is identical to the Section 548(a)(1)(B) concept of 'reasonably equivalent value.'") (citing 11 U.S.C. § 548, governing Fraudulent transfers and obligations under the Bankruptcy Code).

received, and the price obtained."); see also Gaynor v. Union Trust Co., 216 Conn. 458, 478 (Conn. 1990) ("The reasonableness of a commercial resale is ordinarily a question of fact.").  The court in particular pointed to the absence of evidence of normal commercial practices regarding sales of the type at issue here, the relative lack of advertising, the absence of competitive bids, the lack of outside attendees, and the purchase of Lot 2 by the convening party, Respironics.  See Def.'s Summ. J. Ruling at 28-29.

However, the court agrees with Respironics that simply because an issue of fact exists as to whether the sale of the property was not performed in a commercially reasonable, or a regularly conducted and non-collusive way, does not, in and of itself, raise an issue of material fact as the actual underlying value of the property, one way or another.  This analysis merely established that the presumption in favor of finding "reasonably equivalent value" presented in Conn. Gen. Stat. § 52-552d(b) was not applicable.

As a result, Respironics argues, the court's reasoning left the court no closer to finding a material issue of fact as to whether there was evidence to show that Helicor had indeed transferred an "asset" to Respironics as when it began its analysis.  Further, Respironics argues that, because Pirrotti's other, outside evidence of the value of the supposed assets has been rejected by the court, there is no evidence in the record that could allow Pirrotti to meet her burden of proof.

Respironics, however, omits one final possibility: that the nature of the sale itself, some details of which are indeed in the record, raises a material issue of fact as to whether the price received for the Helicor property in the sale was lower than it would

have been at a regularly conducted, non-collusive sale because the procedures used artificially chilled the bidding that would have taken place in a properly constituted sale. See, e.g., Davis v. Victor Warren Properties, Inc., 216 B.R. 898, 913 (Bankr. N.D. Ga. 1997) ("As the Defendants point out, the reported cases in Georgia are nearly unanimous in rejecting efforts of owners to overturn foreclosure sales.  But in these cases, the appellants uniformly failed to connect the alleged defect to the inadequate price.  In the evidence presented by the Defendants, they failed to show the absence of an issue of fact concerning the possibility that the announcement might have contributed to chilling the bidding, resulting in what seems to be a grossly inadequate bid price.").[6]  Pirrotti clearly makes this argument, reasoning from facts in the record -- such as the absence of competitive bidders and the purchase of Lot 2 by the convening party, Respironics -- that the sale was artificially restricted to outsiders allowing for a lower-than-reasonable bid price.  See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Memo. Opp. Mot. Summ. J.") (Doc. No. 150) at 35 (arguing that the sale was not commercially reasonable because the sale was closed to the public with only one bidder for each lot, and that this scenario led to

---

[6] This is also alluded to in one of the cases cited by Respironics.  In In re Thorian, the court reasoned:

> Debtors have not shown a genuine issue as to what price for the Property other than or different from what BARO paid 'would have been received if the foreclosure sale had proceeded' with that paragraph 21 notice having been provided.  In short, Debtors attack the validity of the foreclosure sale on grounds of inadequate notice to them, and that the sale was postponed, not cancelled, and not on any statutory defect that affected notice to others or affected the sales price.  They in fact concede that FATCO did not cause any defects in the foreclosure process that could or would have caused a reduction of the purchase price.  The Debtors have not shown, given such a concession, a material factual dispute regarding the adequacy of the price received at the foreclosure sale.

In re Thorian, 387 B.R. 50, 65 (Bankr. D. Idaho 2008) (quoting BFP v. Resolution Trust Co., 511 U.S. 531, 546 (1994)) (internal quotations and citations omitted).  Here, Pirrotti specifically asserts that the irregularities in the sale process directly led to a price lower than what it would have been.

the sale of Helicor's property at a price below that which it would have sold in the context of an open bidding process). The court does note the absence of additional facts that would make this a stronger inference, such as the identification of alternative, willing bidders who were discouraged from participation. However, the court cannot say that Pirrotti has set forth no issues of fact that preclude a determination as a matter of law that the price obtained at auction for the Helicor property was below what it would have been at a properly conducted sale, and below the fair market value of the property. As such, a material issue of fact exists that prevents the court from determining that the transfer of the property was not a transfer of "assets" within the scope of the Connecticut fraudulent transfer statute, because Pirrotti has come forward with facts that could establish the value of the property actually exceeded the value of the security interest. The court further notes the odd complications at issue here because, since the main purchaser of the property was Respironics itself, and the purchase price was the outstanding debt obligation, the sales price seems to raise or lower to the value of the debt regardless of what others may have paid for it. Given this fact, and the court's earlier observation that it is far from clear that, in Connecticut, the elements of the fraudulent purpose theory of successor liability and the elements of the fraudulent transfer statute are one and the same (and that the court should rigorously apply the threshold question of what constitutes an "asset" to this analysis of the common law doctrine of successor liability), the court adheres to its prior judgment as to the issue of whether or not the transfer involved "assets," albeit for expanded reasons.[7]

---

[7] The court further notes that the ultimate question presented by the fraudulent purpose exception to the general successor liability standard is the more general (and less technical) question of whether the transaction was "entered into fraudulently to escape liability." Chamlink, 96 Conn. App. at 187.

Similar rationale underpins the courts' analysis regarding the constructive fraud claim.  Under <u>Chamlink</u>, "The mere transfer of the assets of one corporation to another corporation or individual generally does not make the latter liable for the debts or liabilities of the first corporation except where . . . the transaction is entered into fraudulently to escape liability."  <u>Chamlink</u>, 96 Conn. App. at 187.  As stated above, under the Connecticut fraudulent transfer statute, this can be demonstrated by "actual intent to defraud" or what has become known as "constructive fraud."  <u>See Infra-Metals, Co. v. Topper & Griggs Grp.</u>, No. 3:05-CV-559 (JCH), 2005 WL 3211385, *3 (D. Conn. Nov. 30, 2005).  To establish a fraudulent transfer claim under a constructive fraud theory, section 52-552e(a)(2) requires that a creditor assert that his claim arose before the transfer occurred and that the debtor made a transfer "without receiving equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."  Conn. Gen. Stat. § 52-552e(a)(2). It is undisputed that the transfer of Helicor's property via the sale left Helicor without any remaining assets.  The court further determined that Pirrotti's claim was asserted before the transfer.  <u>See</u> Def.'s Summ. J. Ruling at 33.  Respironics does not appear to challenge these conclusions.  What remains is the question of whether Helicor received equivalent value in exchange for the transfer.

In its Ruling on Summary Judgment, the court referred to its analysis of the question as related to the question of whether the transfer involved "assets," and relied

16

on its determination that because material issues of fact existed as to the commercially reasonable nature of the property sale, material issues of fact existed as to whether Helicor received equivalent value for its property.  As discussed above, this determination was premature, because failure to satisfy the rubric of commercial reasonableness as a matter of law (as an analogy of whether the sale was regularly conducted or non-collusive) merely precludes the application of the presumption that the sale entailed an exchange of reasonably equivalent value.  The court was, and is, still left with the question of whether Pirrotti (the bearer of the burden of proof) introduced admissible evidence that raised an issue of material fact as to whether the transfer was for less than equivalent value.

As discussed above, see supra at 15, Pirrotti has done so.  Based on facts in the record surrounding the nature of the sale itself, Pirrotti has argued and has raised a material issue of fact regarding whether the nature of the sale artificially chilled the sales price such that price received for the property was below value.  Whether such disputed facts are ultimately persuasive to the jury is another question entirely.  Accordingly, for reasons beyond those stated in its original Ruling, the court adheres to its prior conclusion regarding the constructive fraud theory.

Lastly, the court turns to the actual fraud theory, which was decided in favor of Respironics.  The court's analysis above has raised the issue of whether the court's earlier reasoning was sufficiently fulsome.  The court further observes, as it has earlier in this Ruling, that it is not clear that the common law doctrine of successor liability in Connecticut, which speaks solely of an exception based on whether a transaction was entered into fraudulently to escape liability, rigidly follows the categorizations set forth in

17

the state fraudulent transfer statute.  However, absent reason to depart from what has

become somewhat standard practice in the few Connecticut cases to consider the

issue, the court will continue to do so.

To establish a claim for actual fraud under section 52-552e, a creditor must plead

that his claim arose before the transfer occurred and that the transfer was made "with

actual intent to hinder, delay or defraud any creditor of the debtor."  Conn. Gen. Stat. §

52-552e.  "The determination of the question of fraudulent intent is clearly an issue of

fact which must often be inferred from surrounding circumstances."  Zapolsky v. Sacks,

191 Conn. 194, 200 (Conn. 1983) (internal quotations omitted).  "Such a fact is, then,

not ordinarily proven by direct evidence, but rather, by inference from other facts proven

-- the indicia or badges of fraud."  Id.  Section 52-552e(b) states:

> In determining actual intent . . . consideration may be given, among other factors,
> to whether: (1) The transfer or obligation was to an insider, (2) the debtor
> retained possession or control of the property transferred after the transfer, (3)
> the transfer or obligation was disclosed or concealed, (4) before the transfer was
> made or obligation was incurred, the debtor had been sued or threatened with
> suit, (5) the transfer was of substantially all of the debtor's assets, (6) the debtor
> absconded, (7) the debtor removed or concealed assets, (8) the value of the
> consideration received by the debtor was reasonably equivalent to the value of
> the asset transferred or the amount of the obligation incurred, (9) the debtor was
> insolvent or became insolvent shortly after the transfer was made or the
> obligation was incurred, (10) the transfer occurred shortly before or shortly after a
> substantial debt was incurred, and (11) the debtor transferred the essential
> assets of the business to a lienor who transferred the assets to an insider of the
> debt.

Conn. Gen. Stat. 52-552e(b).[8]  In its Ruling the court, based on the nature of Pirrotti's somewhat off-point opposition memorandum to the Motion for Summary Judgment, found that there was no issue of material fact raised as to actual intent to defraud and granted summary judgment for Respironics.   The court, however, did not fully engage with the badges of actual intent to defraud raised, albeit elliptically and indirectly, in other portions of Pirrotti's brief.   The court notes that Pirrotti only directly addresses the actual intent standard as to the reasonable value of the assets, but it cannot say that Pirrotti waived the issue entirely given the substance of the remainder of the brief.

The facts present in the record touch on several of the badges listed in the statute.   First, the transfer was to an insider, namely, Respironics, the holder of the security interest.   Second, before the transfer was made, Helicor had indeed been sued, by Pirrotti, and a judgment obtained against Helicor.   Third, the transfer was of substantially all of Helicor's assets.   Fourth, as discussed above, a material issue of fact exists as to whether the value of consideration received by Helicor was reasonably equivalent to the value of the asset transferred.   Fifth, Helicor, following the sale, had no other major assets.

The court notes, "The intent of the parties to the transaction 'is purely a question of fact.'"   <u>Citizens Bank of Clearwater v. Hunt</u>, 927 F.2d 707, 711 (2d Cir. 1991) (quoting <u>Tyers</u>, 214 Conn. at 11).   "Ordinarily, such issues are inappropriate for summary judgment."   <u>Id</u>.   Here, the material issues of fact raised as to five separate badges of

---

[8] Respironics' argument that consideration of actual fraud does not apply to it because none of these badges of fraud is "premised on the existence of a security interest" is irrelevant.   <u>See</u> Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Memo. Supp. Mot. Summ. J.") (Doc. No. 126-1) at 19. Simply because having a security interest is not one of the badges of fraud does not mean that the rest of the factors to consider are somehow inapplicable.

fraud are sufficient to defeat summary judgment.  While it may be unlikely that Helicor

engaged in the transfer to shield its assets from Pirrotti, the indicia of fraud present

prevent a determination as a matter of law.  See, e.g., In re Anderson, 166 B.R. 516,

529-30 (Bankr. D. Conn. 1994).  Accordingly the court reverses its determination as the

actual intent theory of the fraudulent purpose exception to the common law doctrine of

successor non-liability.[9]

Pirrotti may proceed to trial on the fourth theory of successor non-liability,

governing fraudulent purpose, under either of the two theories of fraud set forth in the

Connecticut fraudulent conveyance statute.

B. Motion to Disqualify Counsel

Pirrotti has also filed a Motion to Disqualify Counsel.  Pirrotti argues that an

attorney for the firm representing Respironics, Matthew Shiroma, withdrew as counsel

without adequately informing Pirrotti of the reasons for doing so.  Pirrotti argues that

Shiroma subsequently began work for Judge Michael Shea of the District of

Connecticut, creating a conflict of interest because, presumably, the court would be

biased in favor of a firm that formerly employed the new employee of a colleague on the

bench.  Pirrotti asserts that this fact requires the wholesale disqualification of Day

Pitney.

Judge Shea is in no way involved in this matter, and neither is his clerk.  Pirrotti's

Motion is plainly baseless, and it is denied.  See Hunt v. Am. Bank & Trust Co., 783

F.2d 1011, 1015-16 (11th Cir. 1986) (holding that a district court judge need not have

---

[9] Further, as noted above, it is not clear that the common law doctrine of successor liability in
Connecticut sharply delineates between "actual intent" and "constructive" fraud claims in the same
manner as Connecticut's fraudulent transfer statute.

recused himself because two of his clerks had accepted offers of employment from the law firm representing several of the defendants in the case at bar and neither of the clerks worked on the case).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Reconsideration (Doc. No. 178) is **granted**.  The court adheres to its earlier Ruling except as described above (see supra at 17-20), and denies Defendant's Motion for Summary Judgment as to the constructive and actual fraud theories of the fraudulent purpose exception to successor non-liability, and Pirrotti may proceed on those issues to trial.

The court further **denies** Pirrotti's Motion to Disqualify Counsel (Doc. No. 183).

**SO ORDERED.**

Dated at New Haven, Connecticut this 12th day of March, 2013.


____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge